IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | |
|---|---|
| JEFFREY R. JENKINS, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § NO. 4:09-CV-117-A |
| | § |
| NTE AVIATION LTD., ET AL., | § |
| | § |
| Defendants. | § |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendants, NTE Aviation, Ltd. ("NTE"), and Danny Kelly ("Kelly"), for summary judgment as to all claims and causes of action brought against them by plaintiff, Jeffrey R. Jenkins. Having considered the motion, plaintiff's response, defendants' reply, the summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this action by filing a state court petition on January 21, 2009, asserting claims against NTE for age discrimination pursuant to Chapter 21 of the Texas Labor Code and the Age Discrimination in Employment Act, 29 U.S.C. § 623 et

seq. ("ADEA"),[1] and against Kelly for intentional infliction of emotional distress. Defendants timely removed the case to this court on the basis of plaintiff's ADEA claims.

II.

The Motion for Summary Judgment

Defendants contend that summary judgment is proper because plaintiff's termination was based on legitimate, non-discriminatory reasons, and plaintiff cannot prove that those reasons are a pretext for unlawful discrimination. Defendants also claim summary judgment is warranted as to plaintiff's claim of intentional infliction of emotional distress because Kelly did not engage in extreme or outrageous conduct.

III.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

NTE is a privately owned company based in Lewisville, Texas, that is engaged in the aviation parts supply business. NTE has seven owners, including Kelly, Thomas Villani ("Villani"), Larry

---

[1] The state court petition states that plaintiff's claims arise "under Title VII the age discrimination in Employment Act." Notice of Removal, Ex. 1 at 2 ¶ 10. As the only statutory claim asserted is for age discrimination, plaintiff's reference to Title VII was evidently in error.

2

Watkins ("Watkins"), Jason Kennedy ("Kennedy"), and three limited partnerships. At one time a portion of NTE's business and growth strategy included buying aircraft and aircraft engines to lease to third parties, a line of business requiring substantial outside financing. Until the time his employment with NTE ended in September 2008, plaintiff's job duties included some responsibility for NTE's aircraft and aircraft engine leasing program.

By September 2008, NTE executives were concerned about a number of factors that were affecting, or had the potential to affect, the company, including the recession in the United States generally, the struggling airline industry, the lack of capital available for NTE to borrow, the high costs associated with the aircraft and aircraft engine leasing business, and the company's need to control expenses and limit growth and asset purchases. These concerns caused the company's owners to begin an evaluation of their business strategies, including a consideration of the aircraft and aircraft engine leasing operations, which required millions of dollars of capital to purchase the aircraft and aircraft engines for leasing. The owners found outside funding for these purchases increasingly more difficult to obtain, and when funding was available, it was subsequently tied up for

significant periods of time as a result of the purchase of aircraft and aircraft engines. In 2008 the owners found available sources of funding to be severely diminished to the point where they were unable to secure any additional funding. NTE thus decided to focus its business strategy on its core business of selling airplane parts, specifically selling its existing inventory and assets.

In September 2008, Kelly, Watkins, Villani, and Kennedy made the decision to terminate plaintiff's employment, although the reasons for his termination are in dispute and lie at the center of plaintiff's claims in this action. Plaintiff's direct supervisor, William Thompson ("Thompson"), was not involved in, and had no material input into, the decision to terminate plaintiff. Around the same time, defendants terminated the employment of two other employees--a thirty-four-year-old accountant and a twenty-six- year-old sales support employee--who were also involved in the company's aircraft and aircraft engine leasing operations. Defendants did not hire a replacement for plaintiff following his termination.

IV.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part

4

of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [its]

5

claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A. Plaintiff's Age Discrimination Claim Fails

1. Legal framework

Defendants rely on a recent decision by the United States Supreme Court in Gross v. FBL Financial Services, Inc., ___ U.S. ___, 129 S. Ct. 2343 (2009), to set forth the legal standard for evaluating a plaintiff's claim of age discrimination. Rather than rely on the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), defendants contend that, under Gross, "the plaintiff must prove by direct or circumstantial evidence that age was the 'but for' cause" of his termination. Defs.' Mem. Br. in Supp. of Mot. for Summ. J. at 8. Thus, "plaintiff must prove that the employer's proffered reason for its decision is pretextual, and that age bias is the real reason for the employer's decision." Id. Defendants further

6

explain that under Gross, "[t]he burden does not shift to employer to show that it would have taken the adverse employment action regardless of age, even when plaintiff has presented some evidence that age was one motivating factor in that decision." Id. Plaintiff agrees that defendants have set forth the correct legal framework for considering his claim of discrimination based on age.

It is unclear if the Supreme Court in Gross intended to dispense with the McDonnell-Douglas prima facie case and burden-shifting scheme in age discrimination cases. See Gross, 129 S.Ct. at 2349 n.2 ("[T]he Court has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . , utilized in Title VII cases is appropriate in the ADEA context."); but see Cervantez v. KMGP Servs. Co. Inc., 2009 WL 2957297 (5th Cir. Sept. 16, 2009) (applying McDonnell-Douglas to plaintiff's claim of age discrimination in a case decided after Gross). The parties do not argue for or apply McDonnell-Douglas to the instant action. Nevertheless, applying the legal framework set out by the parties, the court concludes that plaintiff has failed to raise a genuine issue of material fact that defendants' reason for his termination is a pretext for discrimination or that age bias instead was the real reason.

2. <u>Merits</u>

Defendants contend that plaintiff was discharged because the company discontinued the line of business for which plaintiff was primarily responsible. Specifically, defendants claim that plaintiff's primary duties included negotiating purchases of aircraft and aircraft engines for leasing to third parties, making him the employee mainly responsible for NTE's leasing operations. In 2008 defendants claim they made the business decision to discontinue the aircraft and aircraft engine leasing operations due to concerns about the recession in the United States generally, the struggling airline industry, the lack of capital available for NTE to borrow to finance its leasing operations, the high costs associated with that line of business, and the company's need to control expenses and limit growth and asset purchases.

Accordingly, NTE no longer needed the services of plaintiff and two other employees who worked in its leasing operations, and those employees were terminated. Defendants have provided the affidavits of Kelly, Watkins, Villani, and Kennedy to support their contentions as to the reasons for plaintiff's termination. Elimination of a position due to business necessity is a legitimate, non-discriminatory reason for plaintiff's discharge.

Berquist v. Washington Mut. Bank, 500 F.3d 344, 356 (5th Cir. 2007); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957-58 (5th Cir. 1993).

Plaintiff contends that defendants' reason for his termination--that NTE was discontinuing its leasing operations--is a pretext for discrimination. Plaintiff offers in support his own affidavit, in which he first takes issue with his role in the company, claiming that defendants "contend[] that [his] job was just buying aircraft and aircraft engines to lease" and that in fact his "greatest accomplishments" while employed by NTE "did not include the 'purchase of aircraft for lease.'" Pl.'s App. at 1. Plaintiff misconstrues defendants' summary judgment evidence.[2]

Defendants maintain that aircraft and aircraft engine leasing were plaintiff's "primary" duties, not his "only" duties. Plaintiff claims that his "profile published on NTE's company web page . . . did not even mention aircraft leasing as one of [his]

---

[2] Plaintiff misconstrues other statements he claims are found in defendants' affidavits. For example, plaintiff claims he did "20 + 20 aircraft engine deals, a business NTE admits they continue today," and that Kelly "makes the claim that at the time of my termination there was only one (1) aircraft under lease to NTE." Pl.'s App. at 3. Defendants do not contend that they continue aircraft engine deals, and Kelly's affidavit states that "NTE has been winding down the leases" that still existed when plaintiff was terminated, and "[a]ll but one" have ended. Defs.' App. at 5. Kelly does not make the statement attributed to him by plaintiff. To the extent he attempts to do so, plaintiff cannot create a fact issue by mischaracterizing defendants' summary judgment evidence.

responsibilities,"[3] id. at 2, and he includes in his affidavit a list of his "duties and responsibilities." Significantly, however, plaintiff never denies that he played a role in NTE's aircraft and/or aircraft engine leasing operations, and the list of job duties and responsibilities set forth in his affidavit only confirms that such was the case. For example, plaintiff's duties included:

- Leadership (overseeing fleet planning, acquisition, sales and leasing)

- Managerial ( . . . leasing and other financing arrangement . . . )

. . . .

- Lease Agreement Drafting and Negotiations

. . . .

---

[3] Plaintiff's affidavit relies in part on information he contends is found on NTE's website, but he offers nothing to support his contentions, such as attaching to his affidavit authenticated evidence of the information he claims was posted on the website. No evidence before the court attests to the authenticity, veracity, or reliability of anything plaintiff alleges is posted on NTE's website, nor does he attempt to prove that any such statements were authored by defendants. Stated differently, plaintiff has offered no evidence that defendants created or approved anything he claims is on their website, an important point since any number of individuals--disgruntled current or former employees, competitors, computer hackers--could potentially alter the postings on a website. Thus, giving plaintiff's allegations as to statements on NTE's website the weight and credibility they deserve, the court concludes they are insufficient to raise a disputed issue as to any material fact. See, e.g., United States v. Jackson, 208 F.3d 633 (7th Cir. 2000) (refusing to consider web postings due to being unfairly prejudicial, irrelevant, hearsay, and lacking evidence of authenticity); St. Clair v. Johnny's Oyster & Shrimp, Inc., 76 F. Supp.2d 773, 775 (S.D. Tex. 1999) ("[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules.").

- Financial Analysis (market value of aircraft and engines subject to lease; worksheets for the purchase, sale and lease of aircraft and engines)

. . . .

- Operational and Technical Expertise (Provide day to day interface with lessors, buyers and sellers of aircraft & engines).

Id. at 2-3 (emphasis added). Further, whatever plaintiff's "greatest accomplishments" may have been, defendants do not contend that his job performance was a factor in his termination, rendering this point irrelevant.

Much of the remainder of plaintiff's affidavit attempts to dispute defendants' contention that they were discontinuing the aircraft and aircraft engine leasing business. Plaintiff's disagreement appears to be based on his own subjective beliefs, as evidenced by such statements as "I don't believe this to be true" and "I believe [defendants] were in negotiations" concerning an aircraft dispute. Id. at 3. Statements in an affidavit based on plaintiff's beliefs are insufficient to defeat summary judgment. See In re Dengel, 340 F.3d 300, 313 (5th Cir. 2003) (affidavit based on information and belief not competent summary judgment evidence); Richardson v. Oldham, 12 F.3d 1373, 1378-79 (5th Cir. 1994) (affidavit based on affiant's belief had no probative force in opposing summary judgment).

11

Plaintiff apparently also contends that defendants' reasons are unworthy of credence because Thompson "question[ed] [his] age in ear shot of company ownership during meetings or in [Thompson's] office with the door open allowing his comments to be overheard by other employees working in cubicles right outside his office." Pl.'s App. at 3. These contentions are also insufficient to establish pretext.

"Oral statements constitute evidence of discrimination if they indicate age-based animus and the speaker is principally responsible for the plaintiff's firing." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002). Defendants contend, and plaintiff does not dispute, that the speaker, Thompson, had no input into and played no part in the decision to terminate plaintiff's employment, and plaintiff does not allege that any of the decision-makers made any age-related comments. Kelly, Watkins, Villani, and Kennedy each deny that they knew about Thompson's comments at the time of plaintiff's termination, and plaintiff fails to controvert their assertions. Absent evidence of a decision-making role by Thompson, his remarks or questions to plaintiff concerning his age are no evidence of age discrimination. See id.

12

Additionally, to serve as evidence of discrimination, comments in the workplace must be "proximate in time to the termination[]." <u>Auguster v. Vermilion Parish Sch. Bd.</u>, 249 F.3d 400, 405 (5th Cir. 2001). Plaintiff has provided no time frame for when the comments were allegedly made and has adduced no evidence that any of Thompson's comments were made at or near the time of the termination of his employment. The alleged comments fail to defeat summary judgment for this additional reason.

B.   <u>Intentional Infliction of Emotional Distress Claim Fails</u>

When considering a claim for intentional infliction of emotional distress, the court must consider as a threshold matter whether the alleged conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery." <u>City of Midland v. O'Bryant</u>, 18 S.W.3d 209, 216-17 (Tex. 2000) (internal citations and quotation marks omitted). This standard requires a showing of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." <u>Id.</u> at 217. Ordinary employment disputes, even wrongful termination of employment, do not rise to the level of extreme and outrageous conduct. <u>GTE SW., Inc.</u>

13

v. Bruce, 998 S.W.2d 605, 612-13 (Tex. 1999); SW. Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d 52, 54 (Tex. 1998).

Here, plaintiff contends that the wrongful termination of his employment, combined with Kelly's failure or refusal to pay him for accrued vacation time, constitute extreme and outrageous conduct. As stated previously, the fact of plaintiff's termination, even if wrongful or unlawful, is insufficient to sustain a claim of intentional infliction of emotional distress. O'Bryant, 18 S.W.3d at 217; GTE SW., Inc., 998 S.W.2d at 612-13.

As for the unpaid vacation time, under Texas law, "vacation pay . . . [is] payable to an employee upon separation from employment only if a written agreement with the employer or a written policy of the employer specifically provides for payment." 40 Tex. Admin. Code § 821.25(a) (Tex. Workforce Comm'n). Plaintiff does not allege that defendants maintained such a policy. Kelly was thus free to decide whether or not to pay plaintiff his accrued but unused vacation time. Declining to do that which an employer is not legally required to do fails to rise to the level of "extreme and outrageous" conduct necessary to sustain plaintiff's claim of intentional infliction of emotional distress. See e.g., Richard Rosen, Inc. v. Mendivil, 225 S.W.3d 181, 193-194 (Tex.App.--El Paso 2005, pet.

14

denied) (alleged conduct of employer, including failure to pay earned vacation and bonus, insufficient to establish employee's claim of intentional infliction of emotional distress). Plaintiff has failed to allege conduct sufficiently extreme and outrageous to sustain a claim of intentional infliction of emotional distress, warranting summary judgment for Kelly on this claim.

VI.

Order

Therefore,

For the reasons stated herein,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Jeffrey R. Jenkins, against defendants, NTE and Kelly, be, and are hereby, dismissed with prejudice.

SIGNED February 19, 2010.

_____
JOHN McBRYDE
United States District Judge

15